# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
September 19, 2018 Session Heard at Chattanooga[1]

## STATE OF TENNESSEE v. JONATHAN DAVID PATTERSON

**Appeal by Permission from the Court of Criminal Appeals**
**Criminal Court for Putnam County**
**Nos. 15-CR-730, 15-CR-731, 15-CR-672, 15-CR-821**
**David A. Patterson, Judge**

_____

## No. M2016-01716-SC-R11-CD

_____

We granted this appeal to determine what showing, if any, a defendant must make to prevail on a motion for reduction of sentence under Rule 35 of the Tennessee Rules of Criminal Procedure, where the defendant pleaded guilty without an agreement as to sentencing, pursuant to Tennessee Rule of Criminal Procedure 11(c)(1)(B). The Court of Criminal Appeals held that a defendant must present post-sentencing information or developments warranting a reduction of sentence to prevail on a Rule 35 motion. We disagree and limit this standard to Rule 35 motions seeking reduction of specific sentences imposed in exchange for guilty pleas, pursuant to Tennessee Rule of Criminal Procedure 11(c)(1)(C). Accordingly, we reverse the judgment of the Court of Criminal Appeals and reinstate the trial court's judgment granting the defendant's Rule 35 motion and reducing his aggregate sentence.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Criminal Appeals Reversed; Judgment of the Trial Court Reinstated.**

CORNELIA A. CLARK, J., delivered the opinion of the court, in which JEFFREY S. BIVINS, C.J., and SHARON G. LEE, HOLLY KIRBY, and ROGER A. PAGE, JJ., joined.

---

[1] Oral argument was heard in this case on the campus of Chattanooga State Community College in Chattanooga, Tennessee, as part of the S.C.A.L.E.S. (**S**upreme **C**ourt **A**dvancing **L**egal **E**ducation for **S**tudents) project.

Seth Clayton Crabtree, Cookeville, Tennessee, for the appellant, Jonathan David Patterson.

Herbert H. Slatery III, Attorney General and Reporter; Andrée S. Blumstein, Solicitor General; Alexander C. Vey, Assistant Attorney General; Bryant C. Dunaway, District Attorney General; Bret Gunn, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Factual and Procedural Background

The relevant facts are not disputed. In July 2015, the defendant, Jonathan David Patterson, broke into several cars and a building in Putnam County. He stole two vehicles and also stole property from inside the vehicles and the building. When the police apprehended the defendant with some of the stolen property in his possession, he led them to more of the stolen property and to several locations where the crimes were committed. He also made statements to the police implicating himself in the crimes.

Thereafter, the Putnam County Grand Jury returned four indictments charging the defendant with a total of forty-two offenses.[2] On May 10, 2016, the defendant pleaded guilty to twenty of the charged offenses, including two counts of theft over $10,000, both Class C felonies;[3] one count of theft over $1,000, and one count of burglary of a building other than a habitation, both Class D felonies;[4] and sixteen counts of automobile

---

[2] The indictments referenced four case numbers. The indictment in case number 2015-CR-730 charged two offenses. The indictment in case number 2015-CR-731 charged thirty-seven offenses. The indictment in case number 2015-CR-821 charged two offenses. The indictment in case number 2015-CR-672 charged one offense.

[3] See Tenn. Code Ann. § 39-14-103 (2018) (defining theft of property); Tenn. Code Ann. § 39-14-105(a)(4) (2012 to 2016) (stating that theft over $10,000 is a Class C felony). Unless specifically indicated by the date noted, citations are to the current version of the relevant statutes because no material differences exist between the current statutes and those in effect when the defendant committed these offenses.

[4] See Tenn. Code Ann. § 39-14-103 (defining theft of property); Tenn. Code Ann. § 39-14-105(a)(3) (2012 to 2016) (stating that theft over $1,000 but less than $10,000 is a Class D felony); Tenn. Code Ann. § 39-14-402(a)(1), (c) (2018) (defining burglary of a building other than a habitation and stating that it is a Class D felony).

burglary, all Class E felonies.[5]  The remaining twenty-two counts, many of them misdemeanors, were dismissed.  The guilty pleas were entered pursuant to Tennessee Rule of Criminal Procedure 11(c)(1)(B), frequently referred to as "open pleas," meaning that the plea did not include any agreement on the length and manner of service of the sentences.[6]

At the July 19, 2016 sentencing hearing, the State introduced a presentence report and certified copies of judgments showing the defendant's nine prior felony convictions.  Five of the defendant's prior felony convictions—a conviction for theft of property between $1,000 and $10,000, three forgery convictions, and a conviction for passing a forged instrument—were based on conduct that occurred in 2007.  The remaining four prior felony convictions—burglary, two convictions of theft of property over $1,000, and aggravated burglary—were based on conduct that occurred in 2010.  The presentence report also reflected a number of misdemeanor convictions and multiple probation revocations.  The State offered no additional evidence.

The defendant's sister testified on his behalf.  She said that the defendant had a drug problem, had been using drugs when he committed these crimes, and had "made bad decisions."  She asked the trial court to exercise leniency in sentencing.  She emphasized that, although the defendant had committed crimes in the past, the defendant had never hurt anyone, and she declared that he "would never hurt anyone."  She believed that if the trial court granted the defendant "leniency," he would "make a change and move forward."

The thirty-four-year-old defendant exercised his right of allocution.[7]  The defendant apologized to the victims and to his own family for his "acts of stupidity."  He admitted being "on drugs" and expressed his deep regret for the "very irresponsible

---

[5]  See Tenn. Code Ann. § 39-14-402(a)(4), (d) (defining burglary of an automobile and classifying it as a Class E felony).

[6]  Tennessee Rule of Criminal Procedure 11(c)(1)(B) provides in relevant part:

> If the defendant pleads guilty . . . to a charged offense . . . the plea agreement may specify that the district attorney general will . . . recommend, or agree not to oppose the defendant's request for, a particular sentence, with the understanding that such recommendation or request is not binding on the court . . . .

[7]  See Tenn. Code Ann. § 40-35-210(b)(7) (2014 & Supp. 2018) ("To determine the specific sentence and the appropriate combination of sentencing alternatives that shall be imposed on the defendant, the court shall consider . . .  [a]ny statement the defendant wishes to make . . . about sentencing . . . .").

decisions" he had made. The defendant emphasized that he could not change the past but again apologized for his conduct and expressed a desire to "accept responsibility for [his] actions, repay [his] debt to society, and make sure this never happens again." The defendant explained that he had pleaded guilty "out of respect for the victims, taxpayers and this [trial] court." He told the trial court that he would "appreciate any leniency possible in sentencing." The defendant offered no further proof.

As for the appropriate sentences, the State and the defendant agreed that the defendant should be classified as a Career Offender on the two Class D felonies and on the sixteen Class E felonies to which he had pleaded guilty.[8] They also agreed that his classification as a Career Offender mandated the maximum Range III sentence of twelve years for each Class D felony and six years for each Class E felony with sixty percent release eligibility applicable to these felonies.[9] As for the two Class C felonies, the State and the defendant agreed that the defendant should be classified as a Range III Persistent Offender based on his prior convictions and that this classification carried a ten-to-fifteen-year sentencing range with forty-five percent release eligibility.[10] Concerning the appropriate sentence within that applicable sentencing range, the State asked the trial court to apply two enhancement factors, specifically: (1) the defendant's previous history of criminal convictions or criminal behavior, and (2) the defendant's failure to comply with the conditions of a sentence involving release into the community.[11] The State also

---

[8] See Tenn. Code Ann. § 40-35-108(a)(3) (2014) ("A career offender is a defendant who has received . . . [a]t least six (6) prior felony convictions of any classification if the defendant's conviction offense is a Class D or E felony.").

[9] See Tenn. Code Ann. § 40-35-108(c) ("A defendant who is found by the court beyond a reasonable doubt to be a career offender shall receive the maximum sentence within the applicable Range III."); Tenn. Code Ann. § 40-35-112(c)(4)–(5) (2014) (stating the maximum Range III sentence for a Class D felony is twelve years and for a Class E felony is six years); Tenn. Code Ann. § 40-35-501(f) (2014 & Supp. 2018) (stating that "[r]elease eligibility for each defendant sentenced as a career offender shall occur after service of sixty percent (60%) of the actual sentence imposed less sentence credits earned and retained by the defendant").

[10] See Tenn. Code Ann. § 40-35-107(a)(1) (2014) (stating that a defendant with "[a]ny combination of five (5) or more prior felony convictions within the conviction class or higher or within the next two (2) lower felony classes, where applicable" is classified as a Persistent Offender); Tenn. Code Ann. § 40-35-107(c) (stating that a Persistent Offender "shall receive a sentence within Range III"); Tenn. Code Ann. § 40-35-501(e) (stating that "[r]elease eligibility for each defendant sentenced as a Range III persistent offender shall occur after service of forty-five percent (45%) of the actual sentence imposed less sentence credits earned and retained by the defendant").

[11] Tenn. Code Ann. § 40-35-114(1) (2014 & Supp. 2018) ("The defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate

asked the trial court to order consecutive service of the sentences, pointing to the defendant's "extensive" record of criminal activity. The State acknowledged, however, that the defendant had no prior convictions of violent crimes, sexual offenses, or offenses against children. The State also agreed that the defendant had admitted his involvement in the crimes, cooperated with the police, helped recover much of the property taken so that it could be restored to the victims, and spared the State the expense of trials by pleading guilty to multiple offenses, even though he had no agreement as to sentencing. The State refused to "recommend a specific number to the court" because the defendant's record was "so bad" and the felonies he committed were "so numerous."

The defendant agreed that he had numerous prior convictions but also emphasized that none were for "violent crimes." The defendant urged the trial court to consider favorably his cooperation with and assistance to the police and the fact that it had resulted in almost all of the stolen property being restored to the victims. He pointed out that not a single victim had appeared to testify at the sentencing hearing and that none had submitted an impact statement to the court. The defendant asked the trial court to consider three mitigating factors, specifically: (1) that he had not threatened or caused any serious bodily injury, (2) that he had assisted the authorities, and (3) that he had expressed remorse for his actions.[12]

As required by the defendant's classification as a Career Offender, the trial court imposed six-year sentences for each of the Class E felonies and twelve-year sentences for each of the Class D felonies, all with sixty percent release eligibility. As for the Class C felonies, the trial court considered the two enhancement factors the State identified, attributing "great weight" to the defendant's history of criminal convictions. It also considered the mitigating factors the defendant identified. Ultimately, the trial court imposed a thirteen-year sentence with forty-five percent release eligibility for each Class C felony.

As to the manner of service of the sentences, the trial court agreed with the State that the defendant's extensive record of criminal activity warranted consecutive service of at least some of the sentences. The trial court ordered the sentences in each felony

---

range[.]"); Tenn. Code Ann. § 40-35-114(8) ("The defendant, before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community[.]").

[12] See Tenn. Code. Ann. § 40-35-113(1) (2014) ("The defendant's criminal conduct neither caused nor threatened serious bodily injury[.]"); Tenn. Code Ann. § 40-35-113(9) ("The defendant assisted the authorities in uncovering offenses committed by other persons or in detecting or apprehending other persons who had committed the offenses[.]"); Tenn. Code Ann. § 40-35-113(13) ("Any other factor consistent with the purposes of this chapter.").

classification served concurrently with the other convictions of the same classification. The trial court ordered consecutive service of the sentences imposed for each felony classification—thirteen, twelve, and six—for an aggregate sentence of thirty-one years.

The defendant timely filed a notice of appeal.  See Tenn. R. App. P. 3(b)(2) (stating that a defendant who pleads guilty may seek review of the sentence if there was no plea agreement concerning the sentence); Tenn. R. App. P. 4(a) (providing that a notice of appeal must be filed within thirty days "after the date of entry of the judgment appealed from").  Later, the defendant timely filed in the trial court a motion for reduction of sentence pursuant to Rule 35 of the Tennessee Rules of Criminal Procedure. Tenn. R. Crim. P. 35 (affording the defendant 120 days after imposition of sentence to file a motion for reduction of sentence).

The defendant alleged in his Rule 35 motion that his aggregate sentence was "excessive in light of the facts present."  He asked the trial court to order concurrent service of all sentences and to provide "any other relief" the trial court deemed appropriate.  The State opposed the Rule 35 motion and asked the trial court to deny it without a hearing based on the defendant's failure to present "post-sentencing information or developments" warranting a reduction of the sentences initially imposed.

The trial court held a hearing, but the defense offered no proof in support of the motion.  The trial court described Rule 35 as giving a sentencing court "the authority and responsibility to reconsider a prior ruling and to modify the ruling if the court believes that the modification is just and proper."  The trial court granted the motion, finding the aggregate sentence initially imposed to be excessive.  The trial court reduced the aggregate sentence by ordering the thirteen-year concurrent sentences with forty-five percent release eligibility served concurrently with the twelve-year concurrent sentences with sixty-percent release eligibility but ordered consecutive service of the six-year concurrent sentences with sixty-percent release eligibility, creating what the trial court described as an aggregate sentence of eighteen rather than thirty-one years.  The trial court described the sentence as eighteen rather than nineteen years because the thirteen-year concurrent sentences have a forty-five percent release eligibility, while the twelve-year concurrent sentences have a sixty-percent release eligibility.[13]  The trial court

_____

[13] The trial court explained its ruling as follows:

> The length of sentence that [the defendant] is presently to serve is 16.65 years. That's the effective sentence. A thirty[-]one year sentence, sixty percent, sixty percent and forty[-]five percent, as I said.  When we add those together, it's 16.65.  The court believes that is excessive.  And the court is going to change its ruling and its judgment to show that the defendant will receive an eighteen[-]year sentence and those will be at sixty percent.  And how the court is going to come to that decision is to run the D felony, which is the burglary, concurrent with the C felonies.  The two C felonies are running concurrently with each other and the D felony will run concurrent with it.  The [sixteen]

- 6 -

entered amended judgments reflecting its ruling, and the State appealed the trial court's decision granting the Rule 35 motion. See Tenn. R. Crim. P. 35(d).

The Court of Criminal Appeals consolidated the defendant's appeal as of right with the State's appeal on the Rule 35 motion. State v. Patterson, No. M2016-01716-CCA-R3-CD, 2017 WL 4342212 (Tenn. Crim. App. Sept. 29, 2017), perm. app. granted (Tenn. Feb. 14, 2018). The Court of Criminal Appeals agreed with the State that to obtain relief on a Rule 35 motion a defendant must present proof of "a post-sentencing change in circumstances that would justify the reduction or modification of a sentence." Id. at *7. The intermediate appellate court concluded that by failing to require the defendant to satisfy this showing, the trial court had relied on an incorrect legal standard and abused its discretion by granting the Rule 35 motion. Accordingly, the Court of Criminal Appeals reversed the trial court's decision on the Rule 35 motion, reinstated the initial aggregate thirty-one-year sentence, and rejected the arguments that the defendant raised in his appeal as of right. Id. at *9. We subsequently granted the defendant's application for permission to appeal. Tenn. R. App. P. 11.

## II. Standard of Review

The standard of review in an appeal from a trial court's decision on a Rule 35 motion is whether the trial court abused its discretion. State v. Irick, 861 S.W.2d 375, 376 (Tenn. Crim. App. 1993). "An abuse of discretion occurs when the trial court applies incorrect legal standards, reaches an illogical conclusion, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party." West v. Schofield, 460 S.W.3d 113, 120 (Tenn. 2015) (citing State v. Banks, 271 S.W.3d 90, 116 (Tenn. 2008)). Here, the Court of Criminal Appeals concluded that the trial court abused its discretion by applying an incorrect legal standard. Thus, the issue in this appeal—whether a defendant must present evidence of post-sentencing information or developments to prevail on a Rule 35 motion to reduce a sentence imposed after a defendant pleads guilty without an agreement as to sentencing—is a question of law to which de novo review applies. State v. Brown, 479 S.W.3d 200, 205 (Tenn. 2015) (stating that determining the scope and proper interpretation of a rule of

auto burglaries, which are the six[-]year sentences at sixty percent will run consecutively then. So we have a sixty percent sentence with all of them and what we have then is an effective twelve[-]year sentence at sixty-percent. Because the thirteen[-]year sentence at forty[-]five is swallowed up by the twelve[-]year sentence at sixty and then the auto burglaries a six[-]year sentence is again a sixty percent sentence and so we have an eighteen[-]year sentence, all of those years to be run at sixty[-] percent for an effective 10.8 prior to release eligibility. That is a reduction of almost six years, 5.85 years, reduction of thirteen years from the thirty[-]one, but effectively a reduction of almost six years . . . .

criminal procedure is a question of law); <u>State v. Johnson</u>, 342 S.W.3d 468, 471 (Tenn. 2011) (same). As a result, we afford no deference or presumption of correctness to the decisions of the courts below on this legal question. <u>Johnson</u>, 342 S.W.3d at 471 (citing <u>State v. Ferrante</u>, 269 S.W.3d 908, 911 (Tenn. 2008)).

### III. Analysis

Rule 35 affords a defendant the right to file a motion for reduction of sentence with the trial court "within 120 days after the date the sentence is imposed or probation is revoked." Tenn. R. Crim. P. 35(a).[14] This 120-day time limit begins to run immediately upon imposition of sentence and cannot be extended or tolled. <u>Id.</u> The filing of a notice of appeal does not divest a trial court of jurisdiction to adjudicate a subsequent timely filed Rule 35 motion. <u>State v. Bilbrey</u>, 816 S.W.2d 71, 75 (Tenn. Crim App. 1991); <u>State v. Biggs</u>, 769 S.W.2d 506, 509 (Tenn. Crim. App. 1988).

The trial court may deny a Rule 35 motion "without a hearing." Tenn. R. Crim. P. 35(c). When a trial court denies a Rule 35 motion, the defendant may appeal "but shall not be entitled to release on bond unless already under bond." <u>Id.</u> at 35(d). When a trial court grants a Rule 35 motion, the trial court may reduce the defendant's sentence "only to one the court could have originally imposed." <u>Id.</u> at 35(b).[15] The State may appeal from a trial court's decision granting a Rule 35 motion. <u>Id.</u> at 35(d).

"The intent of Rule 35 is to allow modification only in circumstances where an alteration of the sentence may be proper in the interests of justice." Tenn. R. Crim. P. 35 advisory commission cmts.; <u>State v. Hodges</u>, 815 S.W.2d 151, 154 (Tenn. 1991). Rule 35 does not provide any other standard to guide or limit the discretion it affords trial courts. Additionally, Rule 35 does not explicitly require a defendant to present any evidence or make any showing to obtain relief. Rule 35 is patterned on the pre-1987 version of Federal Rule of Criminal Procedure 35,[16] which was viewed as affording the

---

[14] Rule 35 provides no authority for a trial court to reduce a sentence in the absence of a motion by the defendant. <u>State v. Hargrove</u>, No. 01S01-9203-CC-00035, 1993 WL 300759, at *2 (Tenn. 1993).

[15] Rule 35 does not alter the statutory authority trial courts have to modify sentences to the jail or workhouse. Tenn. R. Crim. P. 35 advisory commission cmts.

[16] <u>See</u> <u>Hodges</u>, 815 S.W.2d at 158 (Daughtrey, J., dissenting); <u>see also</u> <u>State v. Phelps</u>, 329 S.W.3d 436, 445 (Tenn. 2010) (stating that it is appropriate to consider federal precedent when interpreting Tennessee rules of criminal procedure patterned upon federal rules). The current version of Federal Rule of Criminal Procedure 35 dealing with reduction of sentences differs greatly from our own Rule 35. Federal Rule 35 allows a trial court to reduce a sentence but only upon a motion of the government. If the government's motion is filed within one year of sentencing, the court may reduce the sentence if the defendant "provided substantial assistance in investigating or prosecuting another person."

defendant a second opportunity to appear before the sentencing judge and make "essentially a plea for leniency."[17] Under this pre-1987 version of Federal Rule of Criminal Procedure 35, a district court had wide discretion to reduce a sentence if, upon reflection, the district court concluded that "the sentence originally imposed was, for any reason, unduly severe."[18]

The first Tennessee Supreme Court decision to interpret Rule 35 endorsed the federal view that trial courts have broad discretion under Rule 35 to reduce sentences, including sentences imposed on guilty pleas. Hodges, 815 S.W.2d at 154-55. Hodges involved a consolidated appeal of two separate cases in which the defendants pleaded guilty in exchange for the State agreeing to *recommend* specific sentences to the trial court. Id. at 155. The trial judges accepted the guilty pleas, but at subsequent sentencing hearings, they imposed sentences less than those recommended by the State. Id. The State appealed, arguing that the trial courts lacked authority to reduce the sentences because the defendants had pleaded guilty in exchange for specific sentences, pursuant to Tennessee Rule of Criminal Procedure 11(c)(1)(C).[19] The Hodges Court rejected the State's assertion that the defendants had pleaded guilty in exchange for specific sentences and stated that the record showed only that the prosecutor "made a recommendation to the court in each case" as to sentencing. Id. at 155. However, the Hodges Court also broadly declared that it made "little or no difference whether the plea agreement" included a specific sentence because "[t]here is absolutely no connection between the plea bargaining procedures prescribed in Tenn. R. Crim. P. 11 and the correction or

---

If the government's motion is filed more than one year after sentencing, then the court may only reduce the sentence

> if the defendant's substantial assistance involved: (A) information not known to the defendant until one year or more after sentencing; (B) information provided by the defendant to the government within one year of sentencing, but which did not become useful to the government until more than one year after sentencing; or (C) information the usefulness of which could not reasonably have been anticipated by the defendant until more than one year after sentencing and which was promptly provided to the government after its usefulness was reasonably apparent to the defendant.

Fed. R. Crim. P. 35(b).

[17] See 3 Fed. Prac. & Proc. Crim. § 617 & n.25 (4th ed. September 2018 Update) (quoting cases discussing the pre-1987 version of Federal Rule of Criminal Procedure 35).

[18] See 3 Fed. Prac. & Proc. Crim. § 617 & nn.26–27 (4th ed. September 2018 Update) (citing cases discussing the discretion federal district courts possessed under the pre-1987 version of Federal Rule of Criminal Procedure 35 and discussing various federal court decisions on such motions).

[19] At the time of Hodges, these provisions were contained in Tennessee Rule of Criminal Procedure 11(e)(1)(C).

reduction of sentence provisions of Tenn. R. Crim. P. 35." Id. at 154. In defining the parameters of a trial court's authority under Rule 35, the Hodges Court stated:

> Occasions inevitably will occur when a conscientious judge, after reflection or upon receipt of new probationary reports or other information, will feel that he has been too harsh or has failed to give weight to mitigating factors which properly should have been taken into account. In such cases the interest of justice and sound judicial administration will be served by permitting the trial judge to reduce the sentence within a reasonable time.

Id. at 154 (quoting Dist. Attorney for N. Dist. v. Superior Court, 172 N.E.2d 245, 250–51 (Mass. 1961)).

One justice dissented in Hodges from the majority's broad statement that Tennessee Rules of Criminal Procedure 11 and 35 are not connected and its holding that Rule 35 gives the trial court "unfettered discretion to modify a sentence" entered pursuant to a plea agreement. Id. at 155 (Daughtrey, J., dissenting). Emphasizing that Rule 35 is patterned on the pre-1987 version of Federal Rule of Criminal Procedure 35, Hodges, 815 S.W.2d at 158 (Daughtrey, J., dissenting), the dissenting justice looked to federal precedent for guidance on the question. Id. The dissenting justice agreed with the approach adopted by the Court of Appeals for the Ninth Circuit in United States v. Semler, 883 F.2d 832 (9th Cir. 1989). Semler interpreted the pre-1987 version of Federal Rule of Criminal Procedure 35 as permitting modification of specific sentences imposed in exchange for guilty pleas only in "those exceptional cases where the sentence is plainly unjust or unfair in light of information the district court received after sentencing the defendant." Hodges, 815 S.W.2d at 159 (Daughtrey, J., dissenting) (quoting Semler, 883 F.2d at 834-35). The dissenting justice described the Semler approach as harmonizing Rules 11 and 35 by allowing "the trial court to protect against unfairness to the defendant in the exceptional case, but also giv[ing] the [S]tate the benefit of its bargain in the routine case." Id.

Two years after Hodges, this Court decided State v. Hargrove, 1993 WL 300759, Nos. 01S01-9203-CC-00035, 01S01-9203-CC-00036, 03S01-9203-CC-00026 (Tenn. Aug. 9, 1993).[20] Hargrove involved three cases consolidated for appeal, and this Court again divided four-to-one, with the justice who dissented in Hodges authoring Hargrove and the justice who authored Hodges dissenting in Hargrove. The issue in Hargrove concerned "the scope of authority of an appellate court to alter the terms of a sentence that was imposed as the result of an agreed guilty plea in the trial court." Id. at *1. The State suggested that in sua sponte reducing the sentences in Hargrove the intermediate

---

[20] The Hargrove Court designated its opinion "For Publication," but it was not published. The Appellate Court Clerk recently brought this omission to the attention of the Office of the Attorney General and Reporter and subsequently received assurances that the omission would be rectified.

appellate court may have relied on <u>Hodges</u>.  <u>Id.</u> at *2.  The <u>Hargrove</u> Court then made "several pertinent observations concerning the <u>Hodges</u> decision."  <u>Id.</u>  First, it pointed out that Rule 35 applies only to trial courts.  <u>Id.</u>  Next, it emphasized that Rule 35 does not contemplate sua sponte reduction of sentences, even by trial courts.  <u>Id.</u>  Finally, and most importantly for purposes of this appeal, it stated that Rule 35 is limited in scope "in those cases in which the defendant has pleaded guilty by agreement with the [S]tate, in exchange for a specific sentence."  <u>Id.</u>  The dissenting justice disagreed vigorously with this final observation and viewed it as inconsistent with and a retreat from the broad holding of <u>Hodges</u>.  <u>Hargrove</u>, 1993 WL 300759, at *4 (O'Brien, J., dissenting).

Like the dissenting justice, the Court of Criminal Appeals soon also described <u>Hargrove</u> as a retreat from the broad language of <u>Hodges</u> concerning the relationship between Rules 11 and 35.  <u>State v. McDonald</u>, 893 S.W.2d 945, 947 (Tenn. Crim. App. 1994) (observing that, in <u>Hargrove</u>, "our Supreme Court retreated from its language in <u>Hodges</u>").  In <u>McDonald</u>, the defendant pleaded guilty in exchange for a specific sentence.  <u>Id.</u> at 946.  Thereafter, the defendant timely filed a Rule 35 motion seeking reduction of the specific sentence.  <u>Id.</u>  The trial court denied the Rule 35 motion, citing the plea agreement, and the defendant appealed.  <u>Id.</u>  The State argued that the defendant had waived his right to file a Rule 35 motion by pleading guilty in exchange for a specific sentence.  <u>Id.</u> at 947.  The Court of Criminal Appeals recognized that <u>Hargrove</u> had drawn a distinction "between the type of plea agreement entered into and the application of Rule 35(b)" and had limited the scope of Rule 35 "in those cases in which the defendant ha[d] pleaded guilty by agreement with the [S]tate, in exchange for a specific sentence."  <u>Id.</u> (quoting <u>Hargrove</u>, 1993 WL 300759 at *2).  But the Court of Criminal Appeals rejected the State's argument that pleading guilty in exchange for a specific sentence amounts to a complete waiver of the right to file a Rule 35 motion.  <u>Id.</u>  Instead, relying on the *dissenting* opinion in <u>Hodges</u>, the intermediate appellate court in <u>McDonald</u> concluded that modification of a specific sentence under Rule 35 is possible, but only in exceptional circumstances, "[f]or example, . . . where unforeseen, post-sentencing developments would permit modification of a sentence in the interest of justice."  <u>Id.</u> (footnote omitted).  The Court of Criminal Appeals affirmed the trial court's denial of the Rule 35 motion in <u>McDonald</u> because the defendant had "failed to show that post-sentencing information or developments had arisen to warrant a reduction of his sentence in the interest of justice."  <u>Id.</u> at 947–48.

Unfortunately, the standard derived from the dissenting opinion in <u>Hodges</u> and applied by the Court of Criminal Appeals in <u>McDonald</u> has not been limited, as it should have been, to Rule 35 motions seeking reduction of specific sentences imposed in exchange for guilty pleas.  Rather, it has been incorrectly recited, both by this Court and by the Court of Criminal Appeals, as the standard required to prevail on any Rule 35 motion.  See <u>State v. Ruiz</u>, 204 S.W.3d 772, 778 (Tenn. 2006) (stating erroneously in dicta that the <u>McDonald</u> standard applies to all Rule 35 motions and requires the trial

court to consider whether post-sentencing information or developments have arisen that warrant an alteration of the sentence in the interest of justice); State v. Click, No. E2015-01769-CCA-R3-CD, 2017 WL 1189750, at *23 (Tenn. Crim. App. Mar. 30, 2017), perm. app. denied (Tenn. Aug. 16, 2017) (affirming the trial court's denial of a Rule 35 motion seeking reduction of sentence imposed after a jury trial because the record failed to establish that the defendant presented "the trial court with evidence of a change in circumstances sufficient to warrant [reduction of his eighty-year] sentence 'in the interests of justice'" (quoting State v. Howard, No. W2014-02309-CCA-R3-CD, 2015 WL 8334629, at *3 (Tenn. Crim. App. Dec. 9, 2015)));[21] State v. Evans, No. E2015-01815-CCA-R3-CD, 2016 WL 4582499, at *4–6 (Tenn. Crim. App. Sept. 2, 2016) (affirming the trial court's denial of a Rule 35 motion seeking reduction of a sentence imposed after a jury trial because the defendant failed to show "that post-sentencing information or developments had arisen that warranted a reduction of his sentence in the interest of justice"). In a few cases, the Court of Criminal Appeals has correctly limited the McDonald standard to Rule 35 motions seeking reduction of specific sentences imposed in exchange for guilty pleas. See, e.g., State v. Sowell, No. M2008-02358-CCA-R3-CD, 2010 WL 987196, at *3 (Tenn. Crim. App. Mar. 17, 2010) (citing McDonald and Hargrove and recognizing that relief on a Rule 35 motion seeking reduction of a specific sentence imposed in exchange for a guilty plea is available only when "post-sentencing developments would permit modification of [the] sentence in the interest of justice." (quoting McDonald, 893 S.W.2d at 947)); State v. Payne, No. M2006-01662-CCA-R3CD, 2007 WL 92355, at *1 (Tenn. Crim. App. Jan. 11, 2007) ("When a defendant seeks to modify a sentence entered pursuant to a guilty plea, a motion should be granted when post-sentencing developments arise that should be addressed in the interest of justice." (citing McDonald, 893 S.W.2d at 947)); State v. Gonsales, No. E2002-02687-CCA-R3-CD, 2003 WL 22697299, at *6 (Tenn. Crim. App. Nov. 14, 2003) (recognizing that the plea agreement included a specific sentence and was subject to reduction under Rule 35 only if the defendant satisfied the McDonald standard). In a few other cases involving Rule 35 motions and pleas without an agreement as to sentencing, the Court of Criminal Appeals has analyzed the issue correctly, considering only whether the trial court abused its discretion and not conditioning the entitlement to relief on satisfaction of the McDonald standard. See, e.g., State v. Johnson, No. M2010-01159-CCA-R3-CD, 2011 WL 5551677, at *7 (Tenn. Crim. App. Nov. 15, 2011); State v. Colbert, No. M2012-00225-CCA-R3-CD, 2012 WL 5543520, at *4 (Tenn. Crim. App. Nov. 9, 2012), perm. app. denied (Tenn. Mar. 5,

_____

[21] The application for permission to appeal filed in this Court in Click did not raise any issue about the Court of Criminal Appeals' application of the McDonald standard to evaluate the Rule 35 motion.

2013); State v. Jennings, No. M2006-02055-CCA-R3-CD, 2007 WL 2600541, at *3 (Tenn. Crim. App. Sept. 11, 2007).

Because the dicta in Ruiz has contributed significantly to the erroneous extension of the McDonald standard to all Rule 35 motions, we take this opportunity to clarify the matter. Where, as here, a defendant pleads guilty without an agreement as to sentencing, pursuant to Rule 11(c)(1)(B), and later files a Rule 35 motion to reduce the sentence the trial court imposed for the plea offense, the McDonald standard does not apply. In fact, Rule 35 does not require the defendant to make any particular showing in support of the motion and affords the trial court broad discretion to determine whether reduction of the initial sentence is appropriate in the interest of justice. In these circumstances, Rule 35 functions simply as a second opportunity for a defendant to make a plea for leniency. It provides the trial court an opportunity to again consider, "after reflection *or* upon receipt of new probationary reports or other information," whether the initial sentence is too severe for any reason. Hodges, 815 S.W.2d at 154 (emphasis added) (quoting Dist. Attorney for N. Dist., 172 N.E.2d at 250–51). A defendant in possession of post-sentencing information or developments warranting a reduction of the initial sentence may, and certainly should, use it to support the Rule 35 motion. But a defendant is *required* to provide such information only if the defendant's Rule 35 motion seeks reduction of a specific sentence imposed in exchange for a guilty plea. For Rule 35 motions of this type, the McDonald standard remains applicable and appropriate.[22] It harmonizes Rules 11 and 35 and enables "the trial court to protect against unfairness to the defendant in the exceptional case, but also gives the [S]tate the benefit of its bargain in the routine case." Hodges, 815 S.W.2d at 159 (Daughtrey, J., dissenting) (citing Semler, 883 F.2d at 834–35).

The defendant pleaded guilty without an agreement as to sentence, and therefore, had no obligation to comply with the McDonald standard. The plea did not limit the trial court's discretion under Rule 35. The trial court did not apply an incorrect legal standard or abuse its discretion in any other way when it determined, upon reflection, that the initial aggregate sentence was excessive and granted the defendant's Rule 35 motion, ordering concurrent rather than consecutive service of the thirteen-year and twelve-year sentences. The trial court's decision results in an aggregate nineteen-year sentence, even

---

[22] Prior Tennessee decisions applying the McDonald standard to Rule 35 motions seeking reduction of sentences imposed on open plea agreements or other decisions, like Ruiz, stating in dicta that the McDonald standard applies in such circumstances are overruled. We note, however, that while our holding herein repudiates the dicta of Ruiz, we have not disturbed its primary holding that defendants seeking suspension of sentences under Tennessee Code Annotated section 40-35-306(c) must establish that "post-sentencing information or developments have arisen that warrant an alteration in the interest of justice." Ruiz, 204 S.W.3d at 778 (quoting McDonald, 893 S.W.2d at 948). We note as well that the Court of Criminal Appeals has recently adopted this same standard for an application seeking suspension of sentence under Tennessee Code Annotated section 40-35-303(e). State v. Lloyd, M2017-01919-CCA-R3-CD, 2018 WL 5077694, at *8 (Tenn. Crim. App. Oct. 17, 2018).

though the forty-five percent release eligibility of the thirteen-year sentences is less than the sixty-percent release eligibility of the twelve-year sentences. The Tennessee Department of Correction remains responsible for calculating the defendant's release eligibility on this aggregate sentence. Tenn. Code Ann. § 40-35-501(r) (2018 Supp.) ("Notwithstanding any other law to the contrary, the department is responsible for calculating the sentence expiration date and the release eligibility date of any felony offender sentenced to the department and any felony offender sentenced to confinement in a local jail or workhouse for one (1) or more years."). Therefore we reverse the judgment of the Court of Criminal Appeals and reinstate the judgment of the trial court reducing the defendant's aggregate sentence from thirty-one to nineteen years.[23]

## IV. Conclusion

For the reasons stated herein, the judgment of the Court of Criminal Appeals is reversed, and the judgment of the trial court is reinstated. Costs of this appeal are taxed to the State of Tennessee, for which execution may issue if necessary.

_____
CORNELIA A. CLARK, JUSTICE

---

[23] Although the defendant filed an appeal as of right challenging his thirty-one-year aggregate sentence as excessive, he has not challenged the nineteen-year aggregate sentence as excessive. Nor has the defendant argued in this Court, as he did in the Court of Criminal Appeals, that a comment the prosecutor made during the sentencing hearing amounted to a breach of the plea agreement.